# OREGON PUBLIC EMPLOYEES UNION,
*Petitioner,*

*v.*

# STATE OF OREGON CORRECTIONS DEPARTMENT
and Executive Department,
*Respondents,*

*and*

# AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES,
*Intervenor.*

(UP-91-90; CA A69836)

839 P2d 276

James S. Coon, Portland, argued the cause for petitioner. With him on the brief was Sherwood & Coon, P.C., Portland.

Jas. Adams, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Monica Smith, Portland, argued the cause for intervenor. With her on the brief was Bennett & Durham, Portland.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Warren, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Oregon Public Employees Union (OPEU) seeks judicial review of an Employment Relations Board order dismissing its unfair labor practice complaint against the State of Oregon Corrections Department (department). We affirm.

American Federation of State, County and Municipal Employees (AFSCME) represents employees at several correctional institutions operated by department. OPEU is the representative of the employees of at least one of department's institutions. Before April 27, 1990, the employees at each institution comprised a separate bargaining unit. On that date, department and AFSCME entered into a consent agreement that integrated many of the separate institutional bargaining units represented by AFSCME into two multi-institutional bargaining units. Both would be represented by AFSCME. Because department was in the process of adding new correctional institutions, the agreement also provided:

> "It is further understood that as new institutions come on line, they will be added to the redefined units as appropriate and the parties will bargain separate working conditions."

Department thereby agreed to treat the employees who would eventually be hired to staff the new institutions as members of the existing redefined bargaining units.[1]

OPEU's complaint asserts that department's agreement is an unfair labor practice under ORS 243.672(1)(a), (b) and (f).[2] OPEU explains in its brief:

---

[1] For the sake of discussion, we accept OPEU's argument that the number of present employees is 590 and the number of prospective new ones is 424.

[2] ORS 243.672(1) provides, as relevant:

"It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"(a) Interfere with, restrain or coerce employees in or because of the exercise of rights guaranteed in ORS 243.662.

"(b) Dominate, interfere with or assist in the formation, existence or administration of any employee organization.

"* * * * *

"(f) Refuse or fail to comply with any provision of ORS 243.650 to 243.782."

"Specifically, OPEU claimed [department] had interfered with and restrained employee rights to choose a representative in violation of ORS 243.672(1)(a), dominated, interfered with and assisted in the organizing of the 424 employees yet to be hired in violation of ORS 243.672(1)(b) and violated ORS 243.672(1)(f) by voluntarily recognizing AFSCME as representative of the 424 future employees in violation of ORS 243.666(3)."

ERB rejected those arguments. It first concluded that the redefinition of the bargaining units was the equivalent of a voluntary recognition under ORS 243.666(3):

"Nothing in this section prevents a public employer from recognizing a labor organization which represents at least a majority of employees as the exclusive representative of the employees of a public employer when the board has not designated the appropriate bargaining unit or when the board has not certified an exclusive representative in accordance with ORS 243.686."

ERB found that OPEU had not carried its burden of proving that, with the new employees added to the existing ones, department had or should have had a "good faith doubt" that AFSCME would continue to have majority status among the members of the units. ERB rejected the argument that the agreement violated the organizational and voting rights of the employees of the new institutions, because the voluntary recognition of a representative of a bargaining unit does not depend on a vote of the members. ERB then concluded that the new employees would necessarily be members of the two redefined units because, given ERB's preference for large bargaining units, the employees of the different new institutions could not constitute separate appropriate bargaining units under ORS 243.650(1) and ORS 243.682(1). On the basis of those reasons, ERB concluded that no unfair labor practice had been established.

OPEU contends that ERB's finding on whether department had or should have had a good faith doubt about AFSCME's continuing majority status was not supported by substantial evidence. We disagree. Even if OPEU's numerical assumptions are accepted, *see* note 1, *supra*, the evidence in the whole record supports the finding.

OPEU also challenges ERB's conclusion that the prospective employees cannot constitute appropriate bargaining units on an institution-by-institution basis or any other basis that would not include them in the multi-institutional units created by the agreement. In our view, that issue is unnecessary to the disposition of the complaint and is probably premature.

There is no way to determine whether the new institutions can be the sites of separate appropriate bargaining units until the persons who might eventually be their members are employed and the places of employment are operational. Procedurally, the question cannot be decided before an application is filed pursuant to ORS 243.682(1) and before the composition of the proposed unit is even known. Substantively, the factors that that statute requires to be considered in determining appropriate bargaining unit status cannot be applied in the vacuum that now exists.[3] In *U of O Chapter, AFT v. U of O*, 92 Or App 614, 759 P2d 1112 (1988), we held that, if ERB has considered all of the relevant factors in ORS 243.682(1), its giving greater weight to the so-called "wall-to-wall" large-unit policy than to other factors is not error. In this case, however, ERB has applied that policy before anyone can even know where the walls are and before there is anything to which to apply the other considerations in the statute.

We conclude that, in the present posture of events, OPEU has not demonstrated that an unfair labor practice has occurred.

Affirmed.

---

[3] ORS 243.682(1) provides:

"If a question of representation exists, the board shall:

"(1) Upon application of a public employer, public employee or a labor organization, designate the appropriate bargaining unit, and in making its determination shall consider such factors as community of interest, wages, hours and other working conditions of the employees involved, the history of collective bargaining, and the desires of the employees. The board may determine a unit to be the appropriate unit in a particular case even though some other unit might also be appropriate."